1

2

3

4

5

6

FILED & ENTERED

OCT 23 2015

CLERK U.S. BANKRUPTCY COURT
Central District of California
BY milano    DEPUTY CLERK

7

8

9

**UNITED STATES BANKRUPTCY COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**LOS ANGELES DIVISION**

10

11

12

13

14

15

16

17

18

19

20

21

22

23

In re:

☒    PASADENA ADULT
RESIDENTIAL CARE, INC.

☐    CORONA CARE
CONVALESCENT CORPORATION,

☐    CORONA CARE RETIREMENT,
INC.

☒    CASTLE VIEW SENIOR
RETIREMENT ESTATE, INC.

☒    GARFIELD SENIOR CARE
       CENTER, INC.,

☒    PASADENA HEALTH CARE
MANAGEMENT, INC.

                    Debtor(s)

Case No. 2:13-bk-28484-RK

Jointly Administered with Case Nos. 2:13-
bk-28497-RK; 2:13-bk-28519-RK; 2:13-
bk-28532-RK; 2:13-bk-28538-RK; 2:13-
bk-28545-RK

Chapter 11 Proceedings

**CORRECTED FINDINGS OF FACT
AND CONCLUSIONS OF LAW AFTER
TRIAL ON MOTION TO REVOKE
AND/OR VACATE DISMISSALS AND
REQUEST FOR APPOINTMENT OF
TRUSTEE**

Date:  October 15, 2015
Time:  9:00 a.m.
Location: Ctrm. 1675

24

25

26

27

28

[Note to the reader: These corrected findings of fact and conclusions of law

after trial to replace the findings of fact and conclusions of law entered on October 22,

2015 [DN 482] are being issued to correct formatting errors resulting in the loss of

pagination and line numbers in the original document, and line spacing gaps.  The

1  substance of the corrected document is the same as the original.  The counsel

2  identification information in the case caption in the original document has been now

3  deleted in the corrected document, which better reflects the substantial revisions made

4  by the court in the original document, which had been based on the proposed findings

5  of fact and conclusions of law submitted by counsel.]

6  The above-captioned cases came on for trial before the undersigned United

7  States Bankruptcy Judge on October 15, 2015 in the contested matter of the Motion to

8  Revoke and/or Vacate Dismissals; Request for Appointment of Trustee [DN 443] (the

9  "Revoke Motion") of the Chapter 7 Trustee, Richard K. Diamond (the "Trustee"), of

10  Corona Care Convalescent Corp. (Case No. 2:13-bk-28497) and Corona Care

11  Retirement, Inc. (Case No. 2:13-bk-28519) (the "Corona Debtors" ).[1]  Appearances at

12  the trial were made as reflected on the record.

13  Good cause appearing therefor, pursuant to Federal Rules of Bankruptcy

14  Procedure 7052 and 9014 and Federal Rule of Civil Procedure 52, the court finds and

15  concludes as follows:[2]

16  **I.    STATEMENT OF FACTS**

17  **A.    Background**

18  The Chapter 11 bankruptcy cases of Pasadena Adult Residential Care Center,

19  Inc. (Case No. 2:13-bk-28484), Castle View Senior Retirement Estate, Inc. (Case No.

20  2:13-bk-28532), Garfield Senior Care Center, Inc. (Case No. 2:13-bk-28538),

21  Pasadena Health Care Management, Inc. (Case No. 2:13- bk-28545-RK) (collectively,

22  the "Pasadena Debtors") and the Corona Debtors (together, with the Pasadena

23  Debtors, the "Jointly Administered Debtors") were jointly administered by this court

24  (these cases are referred to collectively as the "Jointly Administered Cases").  Most of

25

26  _____
[1] Terms not defined herein shall have the meaning given to them in the Motion.

27  [2] Findings of fact shall be construed as conclusions of law and conclusions of law shall be construed as findings of fact
where appropriate.

28

2

the facts recited herein are not contested.  Felicidad ("Fely") Ferrer and Renato Ferrer are the 50% owners of all of the Jointly Administered Debtors, and are thus "Insiders."  *See* 11 U.S.C. § 101(31)(B); Request for Judicial Notice in Support of Revoke Motion [Docket Number ("DN") 471], Exhibit 5, Stipulation Re: Motion Pursuant to Sections 305(a) and 1112(b) of the Bankruptcy Code and for an Order Dismissing Chapter 11 Case, at 3[3], ¶ 6.

The real properties on which the Pasadena Debtors operate their licensed assisted living facilities (the "Pasadena Real Properties") are owned by Garfield 1415 LLC, Garfield 1425 LLC and Garfield 1435 LLC (the "Garfield Debtors"), as further explained below.  Reply to Revoke Motion [DN 470], Supplemental Ehrenberg Decl., ¶¶ 1 and 3.

On February 25, 2014, the Jointly Administered Debtors, the Insiders, the Committee appointed in the Jointly Administered Cases (the "Committee"), and HCF Insurance Agency, Inc. ("HCF") (collectively, the "Parties") attended a lengthy court-ordered mediation, and reached a global settlement (the "Settlement"), the terms of which were reflected in the Transcript of Proceedings.  *See* Request for Judicial Notice in Support of Revoke Motion [DN 471], Exhibit 4, Transcript of Proceedings before the Honorable Scott C. Clarkson; Request for Judicial Notice in Support of Revoke Motion [DN 471], Exhibit 5, Stipulation re: Motion Pursuant to Sections 305(a) and 1112(b) of the Bankruptcy Code and for an Order Dismissing Chapter 11 Case, at 4, ¶ 9.

On or about August 27, 2014, the Parties executed and filed the "Stipulation re: Motion Pursuant to Sections 305(a) and 1112(b) of the Bankruptcy Code for an Order Dismissing Chapter 11 Cases" of the Pasadena Cases [DN 380] (the "Stipulation").  Request for Judicial Notice in Support of Revoke Motion [DN 471], Exhibit 5, Stipulation re: Motion Pursuant to Sections 305(a) and 1112(b) of the Bankruptcy

---

[3] Page citations for exhibits are to the Bates stamped page number in the lower right hand corner.

Code and for an Order Dismissing Chapter 11 Case.  The Stipulation provided in pertinent part the following:

**CONDITIONS OF STIPULATION TO DISMISSAL**

As a condition to the agreement of the Committee and HCF to the dismissal as requested by Debtors, the Parties have agreed as follows:

1. The Pasadena Debtors and PHM shall pay all secured and priority claims of the Pasadena Debtors and PHM, if any, in full and shall make a payment of up to $250,000 to all general unsecured creditors of the Pasadena Debtors exclusive of HCF, as soon as possible after the effective date of the dismissals but in no event later than September 30, 2014. . . . Any portion of the $250,000 not paid to general unsecured creditors of the Pasadena Debtors shall remain available for payment of professionals' administrative claims as set forth below.

2. Immediately following entry of the dismissal orders for the Pasadena Debtors and PHM, the Pasadena Debtors and PHM shall pay HCF $550,000.00 by wire transfer of immediately available funds (the "HCF Payment") which shall be applied as a partial payment against the principal amount of HCF's judgment against the Debtors. . . .[4]

3. The Pasadena Debtors and PHM shall pay all non-insider administrative claims in the ordinary course of business, except for professional fees which shall remain subject to the Court's jurisdiction and the filing of fee applications. . . . In order to implement the foregoing, the Pasadena Debtors and PHM have $1.2 million available for distribution to creditors. The professionals will share pro rata in the balance of the funds after the payments to the creditors described above—subject to the filing of fee applications and approval of such fees by the Court. Any approved and unpaid professional fees will be treated as administrative claims in the Corona Debtors' cases, and shall be paid with the same priority as such professional's administrative claims in the Corona Debtors' cases. This treatment was agreed to as part of the Settlement, and is appropriate because of the significant overlap in

---

[4] HCF's judgment was approximately $3.8 million.  Request for Judicial Notice in Support of Revoke Motion [DN 471], Exhibit 7, Judgment in favor of HCF at 7.

1
2
benefit to the various estates of work performed by the professionals and
the difficulty of allocating it as between the estates.

3   Request for Judicial Notice in Support of Revoke Motion [DN 471], Exhibit 5,

4   Stipulation re: Motion Pursuant to Sections 305(a) and 1112(b) of the Bankruptcy

5   Code and for an Order Dismissing Chapter 11 Case at 4-5.

6        On August 28, 2014, the court entered the "Order Granting Motion Pursuant to

7   Sections 305(a) and 1112(b) of the Bankruptcy Code for an Order Dismissing Chapter

8   11 Case" (the "Dismissal Order"), granting the motion of the Pasadena Debtors for an

9   order dismissing their Chapter 11 cases pursuant to 11 U.S.C. §§ 305(a) and 1112(b),

10  "as modified by the Stipulation." *See* Dismissal Order [DN 382].[5]

11       On August 27, 2015, the instant motion was filed by the Committee and was

12  heard on shortened notice on September 2, 2015 [DN 443].  On August 28, 2015, the

13  Trustee filed a notice of joinder [DN 449] and, on October 13, 2015, the Trustee filed

14  a request to substitute the Trustee as the Movant for the Revoke Motion, which was

15  approved by the court.  On September 1, 2015, Venable LLP, former counsel and

16  creditor of the Pasadena Debtors, and Howard Ehrenberg, the Chapter 11 Trustee of

17  the Garfield Debtors, also filed joinders to the Revoke Motion [DN 454 and 455,

18  respectively].  On August 31, 2015, HCF filed a written opposition to the Revoke

19  Motion [DN 453].

20       A further hearing was conducted on September 9, 2015, at which time the court

21  set a schedule of discovery and trial proceedings [DN 461].  On September 23, 2015,

22  the Pasadena Debtors filed a written opposition to the motion [DN 462].  On October

23  13, 2015, HCF filed a conditional withdrawal of its opposition to the motion [DN

24  468], subject to the court's approval of an order approving the Revoke Motion in the

25  form and substance as proposed by the Trustee and HCF regarding the treatment of

26
27
28

---

[5] The court may and does take judicial notice of its own files and records.  *Reyn's Pasta Bella, LLC v. Visa USA, Inc.,* 442 F.3d 741, 746 n. 6 (9th Cir. 2006), Fed. R. Evid. 201(b)(2).

1   HCF's claim and lien.  On October 13, 2015, the Trustee filed a reply and request for

2   judicial notice in support of the Revoke Motion [DN 470 and 471, respectively].  On

3   October 13, 2015, the Pasadena Debtors and Mrs. Ferrer filed a Declaration of

4   Felicidad Ferrer in support of their opposition [DN 472].

5          On October 15, 2015, the court conducted a one-day trial on the motion as a

6   contested matter under Federal Rule of Bankruptcy Procedure 9014, at which time the

7   court received evidence, including witness testimony by declaration and exhibits

8   submitted by the parties.  On October 16, 2015, pursuant to the court's directive at

9   trial, the Trustee submitted proposed findings of fact and conclusions of law after trial

10  and, on October 19, 2015, submitted revised proposed findings of fact and conclusions

11  of law [DN 477 and 479].  On October 19, 2015, also pursuant to the court's directive

12  at trial, the Pasadena Debtors and Mrs. Ferrer filed written objections to the proposed

13  findings of fact and conclusions of law submitted by the Trustee [DN 478].  In their

14  objections to the Trustee's proposed findings of fact and conclusions of law, the

15  Pasadena Debtors and Mrs. Ferrer argue that the motion should be denied for failure

16  of proof, that is, not meeting the standard of clear and convincing evidence for fraud

17  based on misrepresentation [DN 478 at 1-10].  The Pasadena Debtors chide the

18  Trustee and his counsel for not presenting live testimony of their witnesses or calling

19  Mrs. Ferrer as a witness.  *Id.*  The Trustee presented the direct testimony of his

20  nonadverse, cooperative witnesses by declaration which was required by the court's

21  trial procedures (available on the court's website) with cross, redirect and recross

22  examination conducted live, which is permissible under Federal Rule of Civil

23  Procedure 43(a) and Federal Rule of Bankruptcy Procedure 9017 as recognized in *In

24  re Adair,* 965 F.2d 777, 789-790 (9th Cir. 1992) (citations omitted); *see also,* 3 March,

25  Ahart and Shapiro, *California Practice Guide – Bankruptcy* ¶ 20:341 at 20-48 (2014).

26  The court received the direct testimony of the Trustee's witnesses, and Mrs. Ferrer, the

27  Pasadena Debtors' witness, by declaration in accordance with these procedures, but

28  none of these witnesses testified live because neither the Trustee nor the Pasadena

1 Debtors requested any cross-examination of the witnesses, although they had the

2 opportunity to do so, but chose for whatever reason, tactical or otherwise, not to.

3 Although there was no cross-examination of any witness, the court may determine the

4 credibility of the witnesses initially "through the factual consistency in the

5 declarations." *In re Adair,* 965 F.2d at 780. Moreover, the court can assess the

6 credibility of the witnesses by considering the substance of the testimony in the

7 declarations against the other evidence admitted at trial, including the exhibits and the

8 matters for which the court may take judicial notice.

9 **B.    The Trustee has shown that the Pasadena Debtors and the Insiders**

10 **made misrepresentations upon which the Professionals and the**

11 **Committee relied in agreeing to allow the dismissals of the Pasadena**

12 **Debtors' bankruptcy cases.**

13 Over the months following the Settlement, the Jointly Administered Debtors

14 made repeated representations to this court, the Committee, and the estate

15 professionals (the "Professionals"), including the financial advisor for the Jointly

16 Administered Debtors, the consulting firm of Crowe Horwath, LLP, and the attorneys

17 for the Committee, the law firm of Alston & Bird, LLP, that they were in the process

18 of refinancing the Pasadena Real Properties, the proceeds of which were to provide the

19 funding for the Settlement and a plan of reorganization in the Corona Cases. *See*

20 Revoke Motion [DN 443], Stanfield Decl., ¶ 3; Reply to Revoke Motion [DN 470],

21 Schwarzmann Decl., ¶ 5.

22 In or about August 2014, the Jointly Administered Debtors and the Insiders

23 made representations to the Committee and the Professionals that they had received

24 approval for financing sufficient to fund the exit from bankruptcy by the Pasadena

25 Debtors and the Corona Debtors in accordance with the terms of the Settlement (the

26 "Financing"); that the funding was "imminent" but that the lender required that the

27 Pasadena Debtors' bankruptcy cases be dismissed before the loan would fund; and that

28 the priority claims of the Pasadena Debtors' estates, including administrative claims of

the Professionals which have priority under 11 U.S.C. § 507(a)(2), would be paid in full, and that any amount of such claims remaining unpaid from the Pasadena Debtors' estates would be paid through the Corona Cases in the same priority as the professionals' claims in the Corona Cases. *See* Revoke Motion [DN 443], Stanfield Decl., ¶ 4; Reply to Revoke Motion [DN 470], Schwarzmann Decl., ¶¶ 4-6, 10. The Jointly Administered Debtors and the Insiders proposed that the Settlement be accomplished in two steps. First, providing for dismissal of the Pasadena cases, allowing them to re-finance the Pasadena Real Properties; second, the completion of the Settlement through a plan of reorganization for the Corona Debtors. *See* Revoke Motion [DN 443], Stanfield Decl., ¶¶ 4-5; Reply to Revoke Motion [DN 470], Schwarzmann Decl., ¶ 8; Request for Judicial Notice in Support of Revoke Motion, Exhibit 5, Stipulation Re: Motion Pursuant to Sections 305(a) and 1112(b) of the Bankruptcy Code and for an Order Dismissing Chapter 11 Case, at 4, ¶ 11; 5, ¶ 3. According to the financial advisor for the Jointly Administered Debtors, Michael Schwarzmann with the Crowe Horwath firm, Mrs. Ferrer represented to him that the Jointly Administered Debtors and the Insiders were receiving sufficient funds to implement the Settlement through the sale of one of the Insiders' other health care facilities and then through "EB-5" financing based on the Pasadena Real Properties, which would sufficiently fund the Settlement, including the reorganization of the Corona Debtors and the payment of any still outstanding professional fees from the Pasadena Cases. Reply to Revoke Motion [DN 470], Schwarzmann Decl., ¶¶ 4-9; *see also,* U.S. Citizenship and Immigration Services, "About the EB-5 Visa" (online description of the foreign immigrant investor visa program known as "EB-5"), http://www.uscis/working-united-states/permanent-workers/employment-based-immigration-fifth-preference-eb-5/about-eb-5-visa. According to Mr. Schwarzmann, this was a lie as despite Mrs. Ferrer's representations that the EB-5 financing was "imminent," it never materialized as discussed below that the Corona Debtors failed in their efforts to consummate the settlement and the Pasadena Debtors and the Insiders

took out secured financing encumbering the Pasadena Real Properties different from the "imminent" EB-5 financing which did not raise sufficient funds to implement the Settlement and pay the claims of the Professionals as represented. *Id.,* ¶¶ 4-10.

This representation was also made to the court when the Jointly Administered Debtors moved for dismissal of their Pasadena Cases (the "Motion to Dismiss"). The Motion to Dismiss expressly provided that:

17. The Debtors submit that sufficient causes exists for the dismissal of their chapter 11 cases. As the Court is aware, the Debtors have tirelessly worked to raise capital to implement an exit strategy for these cases and to make distributions to the creditors. The Debtors have had numerous disappointments but were finally able to raise the capital necessary to implement the settlement in two phases.

18. The first phase requires the dismissal of the Debtors' cases. Through the dismissal of these cases, the Debtors believe that they can obtain sufficient financing which will provide the liquidity necessary to implement an exit strategy for the Corona Care Convalescent, Inc. and Corona Care Retirement Inc. cases (the "Corona Cases"). Because of their debt structure, the Corona Cases cannot implement an exit strategy at this time—the dismissal and refinancing of the Debtors is necessary in order to generate the liquidity necessary to pay down the debts of the Corona Cases.

19. As noted above, the Debtors have agreed to pay all secured and priority claims, if any, in full and to make a payment of $250,000 to all general unsecured creditors exclusive of HCF. Subject to certain other terms and conditions and in the event that HCF does not oppose the Motion, the Debtors will make a payment of $500,000 to HCF which shall be applied against the principal amount of HCF's judgment against the Debtors. The Debtors shall pay all administrative claims in the ordinary course of business, except for professional fees which shall remain subject to the Court's jurisdiction and the filing of fee applications. The fees of the Office of the United States Trustee shall be paid in full by the Debtors. In order to implement the foregoing, the Debtors anticipate having approximately $1.2 million available for distribution to creditors. The professionals will share prorata in the balance of the funds after the payments to the creditors described

above—subject to the filing of fee applications and approval of such fees by the Court. Any approved and unpaid professional fees will be paid by the Corona Cases.

20<u>. The Debtors believe that the dismissal of these cases is in the best interests of the creditors as it will not only provide for a material (if not full) payment to the creditors but it will also pave the way for the Corona Cases to reorganize.</u> The conversion of these cases will simply lead to a liquidation and no recovery for the creditors because of the Debtors' short-term leases. In addition, the Debtors believe that conversion will put the health of the patients at risk. In light of the options available to the parties, the Debtors believes that dismissal is warranted.

Notice of Motion and Motion Pursuant to Sections 305(a) and 1112(b) of the Bankruptcy Code for an Order Dismissing Chapter 11 Cases [DN 366], at 6-7, ¶¶ 17-20 (emphasis added).

In these cited provisions of the unopposed Motion to Dismiss, the Jointly Administered Debtors and the Insiders represented to the court and the Parties and agreed that they needed to dismiss the Pasadena Debtors' cases to obtain the Financing that would generate the liquidity to pay down the Corona Debtors' debts and to provide funding to reorganize the Corona Debtors in the remaining bankruptcy cases, and that any approved professional fees not paid by the Pasadena Debtors as a result of the dismissals would be treated as administrative claims in the Corona Debtors' cases, and would be paid with the same priority as such professionals' administrative claims in the Corona Debtors' cases. *See id.; see also,* Revoke Motion [DN 443], Stanfield Decl., ¶¶ 4-5; Reply to Revoke Motion [DN 470], Schwarzmann Decl., ¶ 8; Request for Judicial Notice in Support of Revoke Motion [DN 471], Exhibit 5, Stipulation re: Motion Pursuant to Sections 305(a) and 1112(b) of the Bankruptcy Code and for an Order Dismissing Chapter 11 Case, at 4, ¶ 1; 5, ¶ 3. There is no factual dispute that these representations were made.

Based on the evidence admitted at trial, the court finds that the representations that the Financing was approved and that the funding of the loan was imminent were untrue and constitute misrepresentations. *See* Reply to Revoke Motion, Schwarzman Decl., ¶ 11. Neither the Pasadena Debtors nor the Insiders have offered any evidence denying that these representations were made. *See* Opposition to Revoke Motion file by the Pasadena Debtors and Felicidad Ferrer [DN 462]; Declaration of Felicidad Ferrer in Support of Opposition to Revoke Motion [DN 472].

The Trustee offered substantial and credible evidence that the representations in support of the Settlement were untrue. Before the Pasadena Debtors' cases were dismissed, the Pasadena Debtors, the Garfield Debtors and Mrs. Ferrer, among others, obligated the Pasadena and Garfield Debtors on a "Secured Promissory Note," dated August 1, 2014, for $1 million (the "Investor's Pot Note")—secured by real property that was to secure the Financing, including the real property located at 1415 North Garfield Avenue in Pasadena, and by the personal property of the Pasadena Debtors. *See* Reply to Revoke Motion [DN 470], Supplemental Ehrenberg Decl., ¶¶ 7-8 and Exhibit B thereto, at 43 and 44, ¶ 4. The Investor's Pot Note was not approved by this court, nor was it disclosed to the court and to the Professionals, including the Pasadena Debtors' own financial advisor, Mr. Schwarzmann with the Crowe Horwath firm. *See* Reply to Revoke Motion [470], Supplemental Ehrenberg Decl., ¶ 9; Reply to Revoke Motion [DN 470], Schwarzmann Decl., ¶ 9.

Furthermore, contrary to the terms of the Stipulation, the Corona Debtors sought to dismiss their bankruptcy cases. The Stipulation provides that:

> Either (i) failure to file a Disclosure Statement and Plan in the Corona estates consistent with the terms of the Settlement on or before September 30, 2014 (or such further date as the Committee may agree) or (ii) failure to confirm a plan in the Corona estates consistent with the terms of the Settlement on or before February 28, 2015, shall result in the immediate employment by the Corona Debtors' estates of a broker for the purpose of selling the Corona facilities.

11

1

2  *See* Request for Judicial Notice in Support of Revoke Motion [DN 471], Exhibit 5,

3  Stipulation re: Motion Pursuant to Sections 305(a) and 1112(b) of the Bankruptcy

4  Code and for an Order Dismissing Chapter 11 Case, at 6, ¶ 7.  The Corona Debtors

5  did not confirm a plan before February 28, 2015, and thereafter failed to employ a

6  broker; therefore, the Committee filed a "Request of Official Committee of

7  Unsecured Creditors to Enforce Order to Sell Assets of Debtors and for Appointment

8  of a Chapter 11 Trustee" [DN 141 in Corona Cases].  On March 4, 2015, the Corona

9  Debtors filed a response opposing the United States Trustee's motion for appointment

10  of a Chapter 11 trustee, requesting instead that the court dismiss the Corona Debtors'

11  cases.  *See* Debtors' Response to the United States Trustee's Motion Under 11 U.S.C.

12  § 1112(b)(1) to Convert, Dismiss or Appoint a Chapter 11 Trustee [DN 163 in Corona

13  Cases].  On March 6, 2015, the court entered an order granting the United States

14  Trustee's request to appoint a Chapter 11 Trustee to serve in the Corona Cases [DN

15  171 in Corona Cases].

16        The Trustee contends that the Pasadena Debtors and their Insiders further

17  misrepresented throughout the pendency of their bankruptcy cases that the leases

18  between the Pasadena Debtors and the Garfield Debtors (the "Leases") were set to

19  expire on December 31, 2013, and that therefore the Pasadena Debtors were

20  essentially unsaleable as going concern businesses, *see* Revoke Motion [DN 443],

21  Stanfield Decl., ¶ 6 and Exhibits 1-3 thereto, noting that since that time, the

22  Professionals have learned of copies of the Pasadena Debtors' Leases which bear a

23  different expiration date of December 31, 2015, two of which are otherwise

24  substantially identical to Exhibits 2 and 3, *see* Revoke Motion [DN 443], Stanfield

25  Decl., ¶ 7 and Exhibits 4-6 thereto.  While the Trustee's contention appears to be

26  supported by the evidence, the court does not give much weight to this evidence

27  because the Insiders controlled both the Pasadena Debtors and the Garfield Debtors

28  and could have extended the Leases on their own until the bankruptcy cases for the

1    Garfield Debtors were filed and a trustee was appointed for those cases.  The court

2    understood that the Pasadena Debtors could not have been sold as going concerns

3    unless there were extended leases for them or the Pasadena Debtors were sold with the

4    Garfield Debtors.

5        Based on the foregoing, the court finds that the Trustee has proven by clear and

6    convincing evidence that the Pasadena Debtors and the Insiders made material

7    misrepresentations to the creditors, including the Committee and the Professionals,

8    that the Pasadena Debtors and the Insiders needed the dismissal of the Pasadena Cases

9    in order to obtain the Financing to pay the Corona Debtors' debt and to reorganize the

10   Corona Debtors in the Corona Cases, rather than the financing efforts for the Corona

11   Cases being a sham, and the Pasadena Debtors and the Insiders were really seeking

12   financing undisclosed to the creditors and the court, which encumbered the Pasadena

13   Real Properties, for their own purposes and the proceeds of such were not committed

14   to what they had pledged to do for the Corona Cases, and that these

15   misrepresentations induced the creditors to enter into the Stipulation and not oppose

16   the Motion to Dismiss the Pasadena Cases.   In proving that the Pasadena Debtors and

17   the Insiders made these misrepresentations by clear and convincing evidence, the

18   Trustee has satisfied the standard of Rule 60(b)(3) of the Federal Rules of Civil

19   Procedure based on misrepresentations.   The judgment in this instance was the

20   Dismissal Order for the Pasadena Debtors, which the Jointly Administered Debtors

21   and the Insiders with the consent of the creditors, including the Committee and the

22   Professionals, consent was procured through the misrepresentations.   In this regard,

23   the court finds that the direct testimony of the Trustee's witnesses, Ms. Stanfield, Mr.

24   Schwarzmann, Ms. Tate and Mr. Ehrenberg, to be credible, especially considered in

25   context with the other evidence presented by the Trustee described herein to

26   corroborate their testimony, including the documentary evidence, especially the

27   representations in the Stipulation and the Motion to Dismiss the Pasadena Cases, and

28   the events and proceedings in these cases for which the court may take judicial notice.

The court also finds that based on the fact that the Jointly Administered Debtors and the Insiders were negotiating and entered into the undisclosed secured financing with Investor's Pot at the same time they had sought and obtained the assent of the creditors, including the Committee and the Professionals, to the Stipulation and Dismissal of the Pasadena Cases, telling the latter that the "EB-5" financing was "imminent" to sufficiently fund the reorganization of the Corona Cases and payment of creditor claims, including those of the Professionals, the misrepresentations were not innocent, but intentional, indicating "extrinsic fraud" (i.e., a party prevented by a trick, artifice or other fraudulent conduct from fairly presenting his claim through entering into the Stipulation and not opposing Dismissal of the Pasadena Cases).

Alternatively, the court finds that the Trustee has also shown by clear and convincing evidence that the Pasadena Debtors and the Insiders failed to disclose material facts to the creditors, including the Committee and the Professionals, that there was no EB-5 Financing, imminent or otherwise, to reorganize and pay debts of the Jointly Administered Debtors, including the obligations owed to the Professionals, through the Corona Cases, and that the Jointly Administered Debtors and the Insiders had already committed to obtaining secured financing from the Investor's Pot Note, which was inadequate to accomplish the represented objectives of paying the remaining debts through the Corona Cases, which financing was obtained prejudgment, but not disclosed to the creditors and the court, and that these failures to disclose material facts induced the creditors to enter into the Stipulation and not oppose the Motion to Dismiss the Pasadena Cases.

## C.    The Professionals and the Committee detrimentally relied upon the misrepresentations of the Pasadena Debtors and the Insiders.

The court finds that based on the evidence offered by the Trustee, in reliance on the misrepresentations of the Insiders and the Pasadena Debtors, the Professionals and the Committee entered into the Stipulation, which was executed by counsel for the Insiders, the Jointly Administered Debtors, the Committee and HCF. *See* Revoke

1   Motion [DN 443], Stanfield Decl., ¶ 5; Reply to Revoke Motion [DN 470],

2   Schwarzmann Decl., ¶ 11; Request for Judicial Notice in Support of Revoke Motion

3   [DN 471], Exhibit 5, Stipulation re: Motion Pursuant to Sections 305(a) and 1112(b)

4   of the Bankruptcy Code and for an Order Dismissing Chapter 11 Case.

5        The court also finds that in reliance on these misrepresentations, the

6   Professionals agreed that the Insiders would receive their equity through the dismissal

7   of the bankruptcy cases; the Professionals would accept less than the full amounts of

8   their approved administrative claims from the Pasadena Debtors, agreeing instead that

9   their fees would be paid from the Corona Cases funded by the re-financing of the

10  Pasadena Real Properties, which was represented to be imminent pending dismissal of

11  the Pasadena Debtors' bankruptcy cases; and the largest creditor of the estate agreed to

12  be paid a fraction of its claim in connection with the dismissals of the Pasadena

13  Debtors' cases, while other general unsecured creditors were paid in full, subject to its

14  other rights and remedies under the Stipulation. *See* Revoke Motion [DN 443],

15  Stanfield Decl., ¶¶ 4-5; Reply to Revoke Motion [DN 470], Schwarzmann Decl., ¶¶ 4-

16  11; Request for Judicial Notice in Support of Revoke Motion [DN 471], Exhibit 5,

17  Stipulation re: Motion Pursuant to Sections 305(a) and 1112(b) of the Bankruptcy

18  Code and for an Order Dismissing Chapter 11 Case, at 4-5, 7.

19       The court finds that based on this evidentiary record that the Professionals and

20  the Committee would not have agreed to allow the Pasadena Debtors' cases to be

21  dismissed and the equity in those entities to be returned to the Insiders for anything

22  less than full payment of their claims if they had known that the representations were

23  untrue. *See* Revoke Motion [DN 443], Stanfield Decl., ¶¶ 5; Reply to Revoke Motion

24  [DN 470], Schwarzmann Decl., ¶¶ 11. The Insiders and the Jointly Administered

25  Debtors failed to obtain the necessary Financing through the refinancing of the

26  Pasadena Real Properties and failed to confirm a plan for the Corona Debtors, and the

27  Corona Debtors' estates are now administratively insolvent. *See* Revoke Motion [DN

28  443], Exhibit 7, Committee's Motion for Reassignment of Related Cases [DN 288 in

15

1  Corona Cases], Decl. of Diane C. Stanfield in Support Thereof, at 63, ¶ 8; Reply to

2  Revoke Motion [DN 470], Schwarzmann Decl., at 14, ¶ 11

3      **D.    The Trustee has shown that there is a serious and imminent risk to**

4          **the safety and well-being of the patients in the facilities operated by**

5          **the Pasadena Debtors.**

6      In her direct testimony, Rachel Tate, the Long-Term Care Ombudsman and

7  Elder Abuse Prevention Program's representative of WISE & Healthy Aging, testified

8  that she has grave concerns about the health and welfare of the residents and of the

9  patient care facilities operated by the Pasadena Debtors on the Pasadena Real

10 Properties.  Reply to Revoke Motion [DN 470], Tate Decl., ¶ 9.  She further testified

11 that the facilities are not providing an environment that is free of health and safety

12 hazards nor are they providing the necessary care and supervision to meet the needs of

13 the residents.  *See id.,* ¶¶ 5 and 9 and Exhibit A thereto, Noncompliance Summaries &

14 Facility Evaluation Reports at 18, 21, 26, 29, 30, 31, 34, 37, 38, 39.  Additionally, she

15 further testified that the possibility of a lapse in a licensee at the facilities could mean

16 that the more than 200 residents will require relocation.  *See id.*, Tate Decl., ¶ 9.  Ms.

17 Tate declared under penalty of perjury that "this is a monumental task, and [would]

18 result[] in serious disruption to the residents–especially since a large percentage of

19 these residents are mentally ill, and changes to their routine are detrimental to their

20 well-being."  *See id.,* ¶ 9.

21     Ms. Tate also testified: "There currently is a rampant rodent and bed bug

22 infestation (so bad that I have observed bed bugs and cockroaches crawling up the

23 walls, on furnishings, and on the carpet)."  *See id.,* ¶¶ 5-6 and Exhibit A thereto,

24 Noncompliance Summaries & Facility Evaluation Reports at 18, 21, 22, 26, 29, 30,

25 31, 34, 37, 38, 39.  Based on Ms. Tate's declaration, the Facilities have been cited

26 "repeatedly" for these and other problems, resulting in a Noncompliance Conference

27 held on September 29, 2015, with the Community Care Licensing Division

28 ("CCLD") to address the "numerous serious infractions and noncompliance issues."

1   *See id.*, Tate Decl., ¶ 6 and Exhibit A thereto, Noncompliance Summaries & Facility

2   Evaluation Reports.  She also testified that there is a serious lack of programming and

3   a lack of meaningful activities, which further compromises the quality of life for

4   residents and leaves residents with more time to engage in conflicts with each other.

5   *See id.*, Tate Decl., ¶ 8.  The court finds that Ms. Tate's testimony regarding the

6   safety and health concerns of the patients at the facilities operated by the Pasadena

7   Debtors to present health and safety risks to the patients to be credible.  The Pasadena

8   Debtors offered no evidence at trial to rebut Ms. Tate's testimony.

9       **E.    Because the Pasadena Debtors are at imminent risk of losing the**

10          **right to operate in the facilities as a result of the impending**

11          **expiration of their Leases, their defaults in the payment of rent, and**

12          **an impending foreclosure of the real properties, and it is critical that**

13          **the Licenses for the facilities be transitioned to a new operator,**

14          **creditors of the Pasadena Debtors and third parties, the patients at**

15          **the facilities are put at serious risk because any value in the assets of**

16          **the Pasadena Debtors cannot be realized if the Leases expire and**

17          **they cannot continue to operate and there is no contingency plan for**

18          **continued care of the patients if the Pasadena Debtors cannot**

19          **continue operations without new leases.**

20      The court finds that it is an undisputed fact that the Pasadena Debtors are in

21  default under their Leases with their landlords, the Garfield Debtors, owing more

22  than $950,000.00 in unpaid rent.  *See* Reply to Revoke Motion [DN 470],

23  Supplemental Ehrenberg Decl., ¶ 4.  In his capacity as trustee of the Pasadena

24  landlord entities, Howard M. Ehrenberg (the "Garfield Trustee") has made demand

25  on the Pasadena Debtors to commence paying rent, but from the date he was

26  appointed as Garfield Trustee through and including the present, no rent has been

27  paid.  *See id.*, ¶ 6.

28

1   According to Mr. Ehrenberg, the Garfield Trustee has negotiated with the

2   secured lender of the Garfield Debtors to allow him an opportunity to sell the

3   Pasadena Real Properties for the benefit of their estates.    *See id.*, ¶ 11.  The deal

4   requires that the Garfield Trustee must accept an offer by February 1, 2016, open an

5   escrow by March 1, 2016, and close the sale by April 1, 2016, or the secured lender

6   will foreclose on its interests the Pasadena Real Properties.  *See id.* The Garfield

7   Trustee is informed that two interested buyers are proposing to make offers on the

8   Pasadena Real Properties; however, both of their offers will be conditioned on a

9   transfer of the business assets and licenses of the Pasadena Debtors.  *See id.*

10   At the initial hearing on the Revoke Motion held on September 2, 2015, the

11   Garfield Trustee appeared before the court with his counsel, Mark S. Horoupian, to

12   report the terms of an agreement they had negotiated with Mrs. Ferrer.  *See id.*, ¶ 10;

13   Request for Judicial Notice in Support of Revoke Motion [DN 471], Exhibit 3,

14   Transcript of Proceedings before the Honorable Robert Kwan, 18:19-22:8 (page:line).

15   Mrs. Ferrer had agreed to accept a payment of $60,000.00 in exchange for cooperating

16   in a sale of the Pasadena Debtors' businesses and a transfer of their licenses.  *See*

17   Reply to Revoke Motion [DN 470], Supplemental Ehrenberg Decl., ¶ 10; Request for

18   Judicial Notice in Support of Revoke Motion [DN 471], Exhibit 3, Transcript of

19   Proceedings before the Honorable Robert Kwan, 18:19-22:8.  Mrs. Ferrer was in court

20   as counsel for the Garfield Trustee recited the terms of that agreement, and she

21   confirmed her agreement with those terms on the record through her counsel.  *See*

22   Reply to Revoke Motion [DN 470], Supplemental Ehrenberg Decl., ¶ 10; Request for

23   Judicial Notice in Support of Revoke Motion [DN 471], Exhibit 3, Transcript of

24   Proceedings before the Honorable Robert Kwan, 20:1-22:8.  Mrs. Ferrer also agreed to

25   meet with counsel for the Garfield Trustee and the Garfield Trustee at their offices

26   immediately following the hearing to sign a stipulation reflecting those terms.  *See*

27   Reply to Revoke [DN 470], Supplemental Ehrenberg Decl., ¶ 10.  Mrs. Ferrer

28   appeared at their office, but the stipulation was not final when she left, so she agreed

18

that she would sign it the following day.  *See id.*  They sent the stipulation to her counsel that evening, but were told the following day that Mrs. Ferrer was in the hospital and could not be reached to sign the stipulation.  *See id.*  After days of attempts to obtain Mrs. Ferrer's signature, they were informed by her counsel that she was not going to sign the stipulation despite her agreement on the record to do so.  *See id.*  These facts about the reneging of the settlement recited in open court are not rebutted by the Pasadena Debtors.

The Pasadena Debtors have not presented the Garfield Trustee or the court with any coherent plan as to what they intend to do if the Trustee is able to sell the Pasadena Real Properties on which they operate their businesses, or if he is unable to sell the properties, what they will do if the holder of the deeds of trust on the properties proceeds with its foreclosure proceedings.  *See id.* at ¶ 11; *see also* Opposition to Revoke Motion filed by the Pasadena Debtors and Felicidad Ferrer [DN 462]; Declaration of Felicidad Ferrer in Support of Opposition to Revoke Motion [DN 472].

## II. CONCLUSIONS OF LAW

### A. The Court has Jurisdiction to Vacate the Dismissals of the Pasadena Cases

The Dismissal Order provides that, "The Court shall retain jurisdiction with respect to all matters arising from or related to the implementation or interpretation of this Order and the Stipulation."  Dismissal Order [DN 366], ¶ 5.  Movant made a timely motion under Rule 9024 of the Federal Rules of Bankruptcy Procedure, which incorporates Rule 60(c) of the Federal Rules of Civil Procedure.

### B. The Committee as the Original Movant, the Trustee as the Substituted Movant, and the Parties Joining the Motion have Standing to Bring the Motion Before the Court

The original moving party, the Committee, and the parties that the Committee represented, the unsecured creditors, had standing to bring this Motion on the basis

1  that it was a party to the Stipulation, and was aggrieved by the fraud,

2  misrepresentations and misconduct of the Pasadena Debtors and the Insiders.   As the

3  substituted movant, the Trustee of the Corona Debtors' bankruptcy estates now

4  represents the interests of the creditors of those estates, including the Professionals,

5  which had claims in the Joint Administered Cases, in place and instead of the

6  Committee.  Further, the Trustee of the Garfield Debtors had standing to join in the

7  Motion as a creditor of the Pasadena Debtors, being owed at least $950,000.00 in

8  unpaid rent.  Venable, LLP is one of the Professionals aggrieved by the conduct

9  alleged in the Motion and, therefore, had standing to join in the Motion.

10        **C.    The Trustee Has Proven by Clear and Convincing Evidence that the**

11              **Dismissals of the Pasadena Cases Were Obtained through Fraud,**

12              **Misrepresentation or Other Misconduct Pursuant to Rule 60(b)(3) of**

13              **the Federal Rules of Civil Procedure**

14        Rule 60(b)(3) of the Federal Rules of Civil Procedure, applicable to these

15  bankruptcy cases pursuant to Rule 9024 of the Federal Rules of Bankruptcy

16  Procedure, provides in pertinent part the following:

17              On motion and just terms . . . the court may relieve a party or its
18              legal representative from a final judgment, order, or proceeding for
              the following reasons: . . . fraud (whether previously called intrinsic
19              or extrinsic), misrepresentation, or misconduct of an opposing party.

20  "To prevail, the moving party must prove by clear and convincing evidence that the

21  verdict was obtained through fraud, misrepresentation, or other misconduct and the

22  conduct complained of prevented the losing party from fully and fairly presenting the

23  defense." *De Saracho v. Custom Food Machinery, Inc.*, 206 F.3d 874, 880 (9th

24  Cir.2000) (citations omitted).  FRCP 60(b)(3) is "aimed at judgments which were

25  unfairly obtained, not at those which are factually incorrect." *Id.*, 206 F.3d at 880

26  (internal quotations omitted) (citation omitted).

27

28

Rule 60(b)(3) "require[s] that fraud . . . not be discoverable by due diligence before or during the proceedings."  *Casey v. Albertson's Inc.*, 362 F.3d 1254, 1260 (9th Cir. 2004) (citation omitted).  "Rule 60(b)(3) expressly permits judgments to be set aside for fraud whether denominated intrinsic (i.e., perjury) or extrinsic (i.e., a party prevented by trick, artifice or other fraudulent conduct from fairly presenting his or her claim)." 3 Jones, Rosen, Wegner & Jones, *Rutter Group Practice Guide: Federal Civil Trials & Evidence,* ¶ 20:388 at 20-76 (2015), *citing* Fed. R. Civ. P. 60(b)(3), *United States v. Chapman*, 642 F.3d 1236, 1240 (9th Cir. 2011), *Info-Hold, Inc. v. Sound Merchandising, Inc.*, 538 F.3d 448, 455 (6th Cir. 2008), *Travelers Indem. Co. v. Gore*, 761 F.2d 1549, 1551 (11th Cir. 1985).

"[M]isrepresentation in Rule 60(b)(3) must encompass more than false statements made with intent to deceive.  Otherwise, it would be wholly subsumed within the 'fraud' category."   3 Jones, Rosen, Wegner & Jones, *Rutter Group Practice Guide:  Federal Civil Trials & Evidence,* ¶ 20:391 at 20-77, *citing Klonoski v. Mahlab*, 156 F.3d 255, 274-275 (1st Cir. 1998), *United States v. One Douglas A-26B Aircraft*, 662 F.2d 1372, 1374-1375, n.6 (11th Cir. 1981) (*innocent misrepresentation sufficient*) (internal quotations omitted).  Additionally, with respect to the "misconduct" of an opposing  party, "[m]isconduct does not demand proof of nefarious intent or purpose as a prerequisite to redress. . . .   The term can cover even accidental omissions—elsewise it would be pleonastic, because 'fraud' and 'misrepresentation' would likely subsume it. . . .   Accidents—at least avoidable ones—should not be immune from the reach of the rule." *Jones v. Aero/Chem Corp.*, 921 F.2d 875, 879 (9th Cir. 1990), *citing Anderson v. Cryovac, Inc.*, 862 F.2d 910, 923 (1st Cir. 1988).

The Trustee has satisfied his burden of proof under Rule 60(b)(3) in showing by clear and convincing evidence that the Pasadena Debtors and Mrs. Ferrer, an Insider, made certain misrepresentations to the stipulating Parties, including the Committee, representing their creditors, as well as the Professionals, which are also creditors, that

1    caused them to agree to the dismissal of the Pasadena Cases and execute the

2    Stipulation.  Specifically, the Pasadena Debtors and Mrs. Ferrer misrepresented that

3    they had received approval for the refinancing of the Pasadena Real Properties

4    sufficient to fund the Pasadena and Corona Debtors' exit from bankruptcy in

5    accordance with the terms of the Settlement; and that the financing was "imminent"

6    but required the dismissal of the Pasadena Cases before the loan could fund, when in

7    reality it was a sham and such funding had not been authorized or obtained by the

8    Pasadena Debtors or Mrs. Ferrer.  *See* Revoke Motion [DN 443], Stanfield Decl., ¶ 4;

9    Reply to Revoke Motion [DN 470], Schwarzmann Decl., ¶¶ 4-11.

10    Additionally, before the Stipulation was executed and the Pasadena Debtors'

11    cases were dismissed, the Pasadena Debtors, the Garfield Debtors and Mrs. Ferrer,

12    among others, obligated the Pasadena Debtors and Garfield Debtors under the

13    Investor's Pot Note for $1 million without prior court approval.  The Investor's Pot

14    Note was secured by real property that was to secure the financing to fund the

15    reorganization of the Corona Debtors, including the real property located at 1415

16    North Garfield Avenue in Pasadena**,** and by the personal property of the Pasadena

17    Debtors.  *See* Reply to Revoke Motion [DN 470], Supplemental Ehrenberg Decl., ¶¶

18    7-8 and Exhibit B thereto at 43 and 44, ¶ 4.  However, the Investor's Pot Note was not

19    disclosed to the Professionals, including the Pasadena Debtors own financial advisor,

20    or stipulating Parties.  *See* Reply to Revoke Motion [470], Supplemental Ehrenberg

21    Decl., ¶ 9; Reply to Revoke Motion [DN 470], Schwarzmann Decl., ¶ 9.

22    The fact that the Jointly Administered Debtors and the Insiders were negotiating

23    and entered into the undisclosed secured financing with Investor's Pot at the same

24    time they had sought and obtained the assent of the creditors, including the Committee

25    and the Professionals, to the Stipulation and Dismissal of the Pasadena Cases, telling

26    the latter that the "EB-5" financing was "imminent" to sufficiently fund the

27    reorganization of the Corona Cases and payment of creditor claims, including those of

28    the Professionals, indicates that the misrepresentations were not innocent, but

22

1    intentional, indicating "extrinsic fraud" (i.e., a party prevented by a trick, artifice or

2    other fraudulent conduct from fairly presenting his claim through entering into the

3    Stipulation and not opposing Dismissal of the Pasadena Cases).  *See* 3 Jones, Rosen,

4    Wegner & Jones, *Rutter Group Practice Guide:  Federal Civil Trials & Evidence,* ¶

5    20:388 at 20-76, *citing* Fed. R. Civ. P. 60(b)(3), *United States v. Chapman*, 642 F.3d

6    1236, 1240 (9th Cir. 2011), *Info-Hold, Inc. v. Sound Merchandising, Inc.*, 538 F.3d

7    448, 455 (6th Cir. 2008), *Travelers Indem. Co. v. Gore*, 761 F.2d 1549, 1551 (11th

8    Cir. 1985).

9        The facts that the Pasadena Debtors and the Insiders failed to disclose material

10   facts to the creditors, including the Committee and the Professionals, that there was no

11   EB-5 Financing, imminent or otherwise, to reorganize and pay debts of the Jointly

12   Administered Debtors, including the obligations owed to the Professionals, through

13   the Corona Cases, and that the Jointly Administered Debtors and the Insiders had

14   already committed to obtaining secured financing from the Investors' Pot Note, which

15   was inadequate to accomplish the represented objectives of paying the remaining debts

16   through the Corona Cases, which financing was obtained prejudgment, but not

17   disclosed to the creditors and the court, and that these failures to disclose material

18   facts induced the creditors to enter into the Stipulation and not oppose the Motion to

19   Dismiss the Pasadena Cases, which also demonstrates misconduct based on failures to

20   disclose material facts by the Jointly Administered Debtors and the Insiders to

21   demonstrate grounds for relief under Rule 60(b)(3). 3 Jones, Rosen, Wegner & Jones,

22   *Rutter Group Practice Guide:  Federal Civil Trials & Evidence,* ¶ 20:391 at 20-77,

23   *citing Klonoski v. Mahlab*, 156 F.3d 255, 274-275 (1st Cir. 1998), *United States v.*

24   *One Douglas A-26B Aircraft*, 662 F.2d 1372, 1374-1375, n. 6 (11th Cir. 1981)

25   (*innocent* misrepresentation sufficient) (internal quotations omitted).

26       Both the financial advisor for the Pasadena and Corona Cases, Michael D.

27   Schwarzmann, and counsel for the Committee, Diane C. Stanfield, who were involved

28   in the Jointly Administered Cases as Professionals, testified that, but for the fraud,

misrepresentations, and misconduct of the Jointly Administered Debtors and their Insiders, they would not have agreed to allow the dismissals of the Pasadena Debtors on behalf of their respective firms, which were as Professionals administrative expense creditors of the Jointly Administered Cases, including the Pasadena Cases, without full payment of their administrative claims for professional fees.  Ms. Stanfield testified that the Committee would not have agreed to allow the dismissals of the Pasadena Debtors, but for the misrepresentations.  *See* Revoke Motion [DN 443], Stanfield Decl., ¶ 5; Reply to Revoke Motion [DN 470], Schwarzmann Decl., ¶ 11.  The court finds that the testimony of Ms. Stanfield and Mr. Schwarzmann to be credible.

The Professionals and the Committee relied on the misrepresentations to their detriment, in that the Professionals agreed to accept less than full payment in the Pasadena Debtors' bankruptcy cases; and, as more fully set forth in the Stipulation, the largest unsecured creditor, HCF, received less favorable treatment than other similarly situated creditors by agreeing to be paid a partial payment of $550,000.00 on account of its $3.8 million claim in connection with the dismissal of the Pasadena Debtors' cases where the remainder of the general unsecured creditors of the Pasadena Debtors' estates received payment in full.  *See* Revoke Motion [DN 443], Stanfield Decl., ¶ 5; Reply to Revoke  Motion [DN 470], Schwarzmann Decl., ¶¶ 4-11; *see also* Request for Judicial Notice in Support of Revoke Motion [DN 471], Exhibit 5, Stipulation re: Motion Pursuant to Sections 305(a) and 1112(b) of the Bankruptcy Code and for an Order Dismissing Chapter 11 Case.

Based on the foregoing, the court finds that the Trustee has shown by clear and convincing evidence that when the Jointly Administered Debtors and the Insiders made multiple misrepresentations of, and/or failed to disclose, material facts to the Professionals and the Committee which induced them as their creditors to enter into the Stipulation, this constituted  a fraud, misrepresentation or other misconduct which justifies the relief sought pursuant to Rule 60(b)(3) based on a showing of clear and convincing evidence.

### D.    Alternatively, Extraordinary Circumstances also Justify Vacating the Dismissal Order of the Pasadena Cases Pursuant to Rule 60(b)(6) of the Federal Rules of Civil Procedure

Rule 60(b)(6) of the Federal Rules of Civil Procedure, applicable to these bankruptcy cases pursuant to Rule 9024 of the Federal Rules of Bankruptcy Procedure, provides a basis for relief "for any other reason that justifies relief."

Under Rule 60(b)(6), an order "may be set aside when there is any reason not previously considered in the Rule that justifies granting relief." *Community Dental Services v. Tani*, 282 F.3d 1164, 1168 (9th Cir. 2002). "Rule 60(b)(6) should be used sparingly as an equitable remedy to prevent manifest injustice and is to be utilized only where extraordinary circumstances prevented a party from taking timely action to prevent or correct an erroneous judgment." *Zurich Am. Ins. Co. v. Int'l Fibercom, Inc. (In re Int'l Fibercom, Inc.)*, 503 F.3d 933, 941 (9th Cir. 2007) (internal quotations omitted) (citations omitted). The moving "party must demonstrate both injury and circumstances beyond his control that prevented him from proceeding with the prosecution or defense of the action in a proper fashion." *Community Dental Services v. Tani*, 282 F.3d at 1168 (citations omitted).

Since the court determines that the Dismissal Order should be vacated pursuant to Rule 60(b)(3), it need not reach a decision under the alternative provision of Rule 60(b)(6), but it would do so in the alternative if Rule 60(b)(3) did not apply. First, the court would find that the creditors of the Pasadena Debtors, including the Committee representing their interests, and the Professionals, were misled by the representations made by the Pasadena Debtors and the Insiders regarding the Stipulation and Motion to Dismiss the Pasadena Cases, and their ability to collect on their claims has been put at risk by the misrepresentations and the post-dismissal conduct of the Pasadena Debtors and the Insiders has led to a financially untenable situation for the Pasadena Debtors in that due to their failure to pay rent, they are facing eviction by the Garfield Trustee and cessation of operations upon expiration of the Leases in December 2015.

1   Moreover, the court observes that the evidence indicates that the conditions of the

2   facilities of the Pasadena Debtors is deplorable and puts at risk the health and welfare

3   of the more than 200 patients at the facilities.  *See* Reply to Revoke Motion [DN 470],

4   Tate Decl., ¶¶ 4-6 & 9 and Exhibit A thereto, Noncompliance Summaries & Facility

5   Evaluation Reports, at 18, 21, 22, 26, 29, 30, 31, 34, 37, 38, 39.  Additionally, the

6   impending foreclosures of the Pasadena Real Properties and revocation of the

7   Licenses puts the patients, who are primarily elderly and/or mentally ill, at risk of

8   disruptive relocation that will further compromise their well-being, *see* Reply to

9   Revoke Motion [DN 470], Tate Decl., ¶ 9, necessitating some sort of intervention to

10  protect the interests of the patients at the facilities.  These circumstances justify relief

11  from judgment under Rule 60(b)(6) if Rule 60(b)(3) is inapplicable.

12  **III.    THE APPOINTMENT OF A CHAPTER 11 TRUSTEE TO SERVE IN**

13  **THE REINSTATED PASADENA CASES IS WARRANTED PURSUANT**

14  **TO 11 U.S.C. §§ 1104(A)(1) AND (2)**

15          Having determined that it is appropriate to vacate the Dismissal Order of the

16  Pasadena Debtors' Cases, the court now turns to consider the Trustee's motion to

17  appoint a Chapter 11 trustee in the reinstated Pasadena Cases.

18          Section 1104(a) of the Bankruptcy Code provides that:

19

20          At any time after the commencement of the case but before confirmation
        of a plan, on request of a party in interest or the United States trustee,
        and after notice and a hearing, the court **shall** order the appointment of a
21      trustee—

22              (1)    for cause, including fraud, dishonesty, incompetence, or
        gross mismanagement of the affairs of the debtor by current
23      management, but not including the number of holders of securities of the
        debtor or the amount of assets or liabilities of the debtor; or

24
                (2)    if such appointment is in the interests of creditors, any
25      equity security holders, and other interests of the estate, without regard to
        the number of holders of securities of the debtor or the amount of assets
26      or liabilities of the debtor.

27  11 U.S.C. § 1104(a) (emphasis added).

28

The parties seeking appointment of a Chapter 11 trustee under 11 U.S.C. § 1104(a) have the burden of proving appropriate grounds exist for such appointment by the preponderance of the evidence. 1 March, Ahart and Shapiro, *California Practice Guide – Bankruptcy* ¶ 4:2001 at 4-144, *citing In re William A. Smith Const. Co., Inc.*, 77 B.R. 124, 126 (Bankr. N.D. Ohio 1987); *see also Grogan v. Garner*, 498 U.S. 279, 286-291 (1991); *accord, In re Corona Care Convalescent Corp.,* 527 B.R. 379, 384 (Bankr. C.D. Cal. 2015); *contra, In re Bellevue Place Assocs.,* 171 B.R. 615, 623 (Bankr. N.D. Ill. 1994) (concluding that appointment of trustee requires clear and convincing evidence, but decided before *Grogan v. Garner,* stating that preponderance of the evidence standard applies unless express congressional direction to apply higher standard), *see,* 1 March, Ahart and Shapiro, *California Practice Guide– Bankruptcy* ¶ 4:2001 at 4-144). Cause and the best interest of creditors and other parties are separate and independent bases for granting a motion to appoint a trustee under 11 U.S.C. § 1104(a).

## A.    Appointment of a Trustee is Warranted Under 11 U.S.C. § 1104(a)(1)

The list of the enumerated "causes" under Section 1104(a)(1) of the Bankruptcy Code, 11 U.S.C., is nonexhaustive. *See In re Bellevue Place Assocs.,* 171 B.R. at 622-623; *see also* Local Bankruptcy Rule 1001-2(5) ("includes" and "including" are not limiting). A determination of cause is within the discretion of the court and due consideration must be given to the various interests involved in the bankruptcy proceeding. *See In re Bellevue Place Assocs.,* 171 B.R. at 623-624. Some cases have held that, once a court finds that "cause" exists to appoint a trustee under 11 U.S.C. § 1104(a)(1), a trustee shall be appointed and there is no discretion to deny relief. 1 March, Ahart and Shapiro, *California Practice Guide – Bankruptcy* ¶ 4:1981 at 4-143, *citing In re Oklahoma Refining Co.*, 838 F.2d 1133, 1136 (10th Cir. 1988), *In re Bonded Mailings, Inc.* 20 B.R. 781, 786 (Bankr. E.D. N.Y. 1982).

1    The court determines that the Trustee has satisfied his burden of showing the

2    existence of fraud, dishonesty, incompetence and gross management on the part of the

3    Pasadena Debtors and the Insiders, as set forth in the record above.  Additionally,

4    since the court has granted the motion to vacate the dismissals of the Pasadena Cases,

5    the court finds that the health and safety concerns of the patients constitute cause to

6    appoint a trustee to help oversee the conditions of the facilities and the care of patients.

7    If a fiduciary is not put in place to stabilize the situation involving patient care, one or

8    more of a number of bad things may result: the Garfield Trustee, in the exercise of his

9    fiduciary duties, will terminate the Leases for nonpayment; the Leases will expire and

10   the Pasadena Debtors will lose their right to operate at the facilities; the Pasadena Real

11   Properties will be sold; or the secured lender on the Pasadena Real Properties will

12   foreclose.  Any of these will result in the loss of the current Licenses of the Pasadena

13   Debtors such that they cannot be transferred, necessitating the safe relocation of the

14   patients.

15   **B.    Appointment of a Trustee is Warranted Under 11 U.S.C. §**

16   **1104(a)(2)**

17   With respect to whether a trustee should be appointed under Section 1104(a)(2)

18   of the Bankruptcy Code, 11 U.S.C., the courts look to the totality of the circumstances.

19   *See In re Hotel Associates, Inc.*, 3 B.R. 343, 345 (Bankr. E.D. Pa. 1980) (The

20   bankruptcy courts "look to the practical realities and necessities inescapably involved

21   in reconciling competing interest.").  The appointment of a trustee under 11 U.S.C. §

22   1104(a)(2) is appropriate, for example, where there is gross mismanagement and

23   continued financial excesses by current management to protect the interests of the

24   estate and creditors.  *See In re La Sherene, Inc.*, 3 B.R. 169, 175-76 (Bankr. N.D. Ga.

25   1980).

26   As the evidentiary record above demonstrates, the Pasadena Debtors have acted

27   in bad faith in making the misrepresentations to their creditors, including those

28   represented by the Committee and the Professionals, and have not acted responsibly in

the treatment of the creditors and the patients under their charge, in reckless disregard of the dire financial realities of its businesses.  The Pasadena Debtors have been in default in the payment of rent for a number of months and are at risk of losing their Leases and being evicted as well as losing their Licenses as a consequence.  They have failed to respond to the Garfield Trustee's demands for payment of rent; they have suggested no plan to the Garfield Trustee or this court in response to the motion as to what will happen to the patients upon a sale or foreclosure of the Pasadena Real Properties; and they maintain their facilities in poor condition jeopardizing the health and safety of the patients, all of which necessitates the appointment of a trustee to protect the interests of the estate, creditors and equity holders under 11 U.S.C. § 1104(a)(2).  *See In re Corona Care Convalescent Corp.,* 527 B.R. at 384-385 and n. 4.  The Pasadena Debtors and the Insiders, the equity holders, face a hopeless financial situation in that they have no exit strategy to continue operations, reorganize and pay debts due to their rent defaults and the nonrenewal of the Leases on the premises where they operate by the Garfield Trustee for rent nonpayment.  The only way for the creditors and the equity holders to realize value from the assets of the Pasadena Debtors is a sale of the assets coordinated with the sale of the underlying real property held in the bankruptcy estates of the Garfield Debtors.  The Pasadena Debtors have offered no other options, and the evidence indicates to this court that there are no other options.  Thus, the court determines that to best effectuate a combined and orderly sale of the assets to realize value of the bankruptcy estates of the Pasadena Debtors as well as the Garfield Debtors as well as to protect the safety and welfare of the patients in residence at the facilities operated by the Pasadena Debtors, a trustee should be appointed in the interest of creditors, the equity holders and the other interests of the estate pursuant to 11 U.S.C. § 1104(a)(2).

For the foregoing reasons, the appointment of a trustee is warranted pursuant to 11 U.S.C. §§ 1104(a)(1) and (2) based on the preponderance of the evidence.

**CONCLUSION**

Based on the foregoing, the court determines that revocation of the Dismissal Order dismissing the Pasadena Debtors' bankruptcy cases and the appointment of a Chapter 11 trustee are both warranted and appropriate, and that the Trustee's Revoke Motion to revoke the dismissals and appoint a trustee should be granted.  A separate order conditionally granting the motion is being entered concurrently, which conditions are explained in the order.

###

Date: October 23, 2015

_____
Robert Kwan
United States Bankruptcy Judge